UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------X
QING YANG SEAFOOD IMPORT
(SHANGHAI) CO., LTD.

                        Petitioner,

              -against-

JZ SWIMMING PIGS, INC.,

                        Respondent.
------------------------------------------------------X

**REPORT AND RECOMMENDATION**
21-CV-3587 (RPK) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

      Petitioner Qing Yang Seafood Import (Shanghai) Co., Ltd. ("Petitioner") petitioned this Court to confirm a foreign arbitration award against JZ Swimming Pigs, Inc. ("Respondent") on June 25, 2021. (Petition to Confirm Arbitration Award ("Pet."), ECF No. 1.) On October 4, 2021, the Clerk of Court certified Respondent's default for failing to plead or otherwise defend this action pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. (Clerk's Entry of Default, ECF No. 8.) Petitioner then moved for default judgment against Respondent, which motion the Honorable Rachel P. Kovner referred to the undersigned Magistrate Judge. (Mot. for Default J., ECF No. 9; Oct. 22, 2021 ECF Order.) For the reasons set forth below, the Court respectfully recommends that Petitioner's motion for default judgment be granted.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**I.   The Parties' Contractual Relationship**

      Petitioner Qing Yang Seafood Import (Shanghai) Co., Ltd. is a company incorporated under the laws of China with a principal place of business in Shanghai,

1

China. (Pet., ECF No. 1, ¶ 1.) Respondent JZ Swimming Pigs, Inc. is a New York corporation with its principal place of business in Flushing, New York. (*Id*. ¶ 2.) On September 5, 2017, Petitioner entered into an Import Agency Framework Agreement ("Framework Agreement") with Respondent. (*Id*. ¶ 7.) Under this Framework Agreement, Petitioner agreed to act as Respondent's import agent and provide services including customs clearance, transportation, and warehousing of the imported goods. (*Id*. ¶ 8.) Pursuant to this agreement, Henan Synear Food Co., Ltd. ("Synear") served as Respondent's designated Chinese purchaser, which involved, among other things, receiving goods from Respondent under the Framework Agreement. (*Id*. ¶ 9.) The Framework Agreement detailed that all disputes related to it would be submitted for arbitration before the Shanghai Arbitration Commission (the "Commission"). (*Id*. ¶ 13.)

## II. The Shanghai Arbitration Commission Award

The underlying dispute stems from Respondent's failing to uphold its end of the Framework Agreement. In September 2017, Synear made an advance payment of roughly RMB 1.5 million to Petitioner for a shipment of frozen food. (*Id*. ¶ 10.) Petitioner then transferred the amount to Respondent but Respondent failed to timely deliver the goods to Petitioner. (*Id*. ¶¶ 10–11.) As a result, Petitioner was only able to deliver RMB 279,000 worth of goods to Synear. (*Id*. ¶ 11).

Synear sued Petitioner in a court in China, where Petitioner lost and was ordered to pay Synear RMB 1,221,000. (*Id*. ¶ 12.) On December 17, 2019, Petitioner commenced an arbitration proceeding against Respondent before the Commission to recover its losses. (*Id*. ¶ 15.) Respondent failed to appear. (*Id*. ¶¶ 17–18.) The Commission proceeded by default and on August 14, 2020, ordered Respondent to

2

pay Petitioner the full RMB 1,221,000 owed to Synear plus interest, attorneys' fees, and other miscellaneous fees. (*Id.* ¶¶ 18–20.)

**III. Procedural History**

Petitioner filed a petition in this Court to affirm the Commission's Award ("the Award") on June 25, 2021. (Pet., ECF No. 1.) The undersigned Magistrate Judge thereafter directed the parties to file a joint status report to advise the Court on the status of the case after Respondent failed to file an answer. (Sept. 7, 2021 ECF Order.) Petitioner filed a status report on September 28, 2021, indicating that Respondent "has not appeared in this action or otherwise been in contact with [Petitioner's] counsel." (Sept. 28, 2021 Status Report, ECF No. 6.) The same day, Petitioner filed a request for a certificate of default along with an affirmation detailing the procedural and factual background to that point and noting Respondent's failure to pay the Award. (Request for Certificate of Default, ECF No. 7; Aff. in Supp. of Request for Certificate of Default, ECF No. 7-1.)

The Clerk of Court filed an entry of default on October 4, 2021, noting that Respondent failed to appear or otherwise defend this action, and Petitioner moved for default judgment. (Clerk's Entry of Default, ECF No. 8; Mot. for Default J., ECF No. 9.) Judge Kovner thereafter referred Petitioner's motion for default judgment to the undersigned Magistrate Judge. (Oct. 22, 2021 ECF Order.) This Court then scheduled a telephonic default motion hearing on January 27, 2022, and sent a notice to Respondent indicating that Petitioner "has asked the Court to enter a default judgment against you" and that "[t]he amount may total over $200,000 U.S. dollars." (Dec. 16, 2021 ECF Scheduling Order; Notice to Respondent, ECF No. 11, at 1.)[1]

---

[1] The notice instructed the Clerk of Court to mail a copy of the notice and the full docket sheet to Respondent's last known address: JZ Swimming Pigs, Inc., 136-20 38th Ave.,

3

Despite the notice, Respondent failed to appear at the January 27, 2022 motion hearing. (Jan. 27, 2022 ECF Minute Entry and Order.) At the hearing, the Court noted that it was taking Petitioner's motion for default judgment under advisement. (*Id.*)

## DISCUSSION

### I. Legal Standards

#### A. Entry of Default Judgment

Generally speaking, Federal Rule of Civil Procedure 55 provides a "two-step process" for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment. *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). The Clerk of Court enters the default when a defendant, or respondent, "has failed to plead or otherwise defend" in an action. Fed. R. Civ. P. 55(a). After a certificate of default is entered, the district court may, upon application, enter a default judgment. Fed. R. Civ. P. 55(b)(2). *See also* E.D.N.Y. Local Civ. R. 55.2(b).

However, "just because a party is in default, the [petitioner] is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). The court "may first assure itself that it has personal jurisdiction over the [respondent]." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011). In addition, a party must take several steps before the court will grant default judgment. A party seeking

---

Suite 101, Flushing, NY 11354. (Notice to Respondent, ECF No. 11, at 2.) This is the same address included in the New York Department of State Corporation and Business Entity Database. *See* NEW YORK DEPARTMENT OF STATE DIVISION OF CORPORATIONS, *Corporation and Business Entity Database*, https://apps.dos.ny.gov/publicInquiry/#search (last visited Apr. 15, 2022).

default must first demonstrate proper service of the summons and complaint. *See Advanced Capital Commercial Group, Inc. v. Suarez*, No. 09-CV-5558 (DRH) (GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013). The party must also establish compliance with the procedural requirements of E.D.N.Y. Local Civil Rules 7.1, 55.1, and 55.2.²

The court must then determine whether the "allegations establish [the respondent's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). In making this determination, a court accepts a party's "factual allegations as true and draw[s] all reasonable inferences in [the party's] favor." *Id*. However, "a pleading's legal conclusions are not assumed to be true . . . ." *Chen v. JP Standard Constr. Corp.*, No. 14-CV-1086 (MKB) (RLM), 2016 WL 2909966, at *4 (E.D.N.Y. Mar. 18, 2016), *report and recommendation adopted*, No. 14-CV-1086 (MKB) (RLM), 2016 WL 2758272 (E.D.N.Y. May 12, 2016).

This is especially true in the context of a default motion seeking to enforce an arbitral award. As the Second Circuit has observed, "Rule 55 does not operate well in the context of a motion to confirm or vacate an arbitration award." *D.H. Blair & Co. v Gottdiener*, 462 F.3d 95, 107 (2d Cir. 2006). Because a record has already been developed during the course of the underlying arbitration proceeding, courts in our

---

² The Court notes that Petitioner's motion papers comport with Local Rule 7.1, and that Petitioner has established procedural compliance with Local Rules 55.1 and 55.2, which govern default judgment motions. Specifically, Petitioner (1) requested a certificate of default in accordance with Local Rule 55.1(a) (*see* Request for Certificate of Default, ECF No. 7); (2) filed an affidavit demonstrating that Respondent failed to defend the action, the pleadings were properly served, and the individual against whom the default is sought is "not an infant, in the military, or an incompetent person," in accordance with Local Rule 55.1(b) (*see* Aff. in Supp. of Request for Certificate of Default, ECF No. 7-1); and (3) certified the mailing of the Request for Certificate of Default, Affirmation in Support of Request for Certificate of Default, and Certificate of Default upon Respondent at its last known business address in accordance with Local Rule 55.2(c). (*See* Aff. of Service, ECF No. 12.)

5

circuit generally treat the movant's application for default judgment like an "unopposed motion for summary judgment" to confirm the arbitration award. *Korean Trade Ins. Corp. v. Eat It Corp.*, No. 14-CV-3456 (MKB), 2015 WL 1247053, at *3 (E.D.N.Y Mar. 16, 2015).

To grant Petitioner's motion, "the Court must therefore find that the record 'show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Id.* (quoting *Laundry, Dry Cleaning Workers & Allied Indus. Health Fund, Unite HereA v. Jung Sun Laundry Grp. Corp.*, No. 08-CV-2771 (DLI) (RLM), 2009 WL 704723, at *4 (E.D.N.Y. Mar. 16, 2009)). "'In determining whether there is a genuine issue of material fact, the court must resolve all ambiguities, and draw all inferences, against the moving party.'" *Jung Sun Laundry Grp. Corp.*, 2009 WL 704723, at *4 (quoting *Sista v. CDC Ixis N.A., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006)).

### B. Enforcement of a Foreign Arbitral Award

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards, otherwise known as the "New York Convention," governs judicial confirmation of foreign arbitration awards. *See* 9 U.S.C. §§ 201–208; *see also Agility Pub. Warehousing Co. v. Supreme Foodservice GMBH*, 495 F. App'x 149, 151 (2d Cir. 2012) (summary order). Under 9 U.S.C. § 207, a party may seek to confirm a foreign arbitral award under the New York Convention if the award (1) falls under the Convention; (2) was issued within the past three years; and (3) does not fall under a relevant exception. 9 U.S.C. § 207.

Article V of the New York Convention sets forth seven explicit grounds for refusal of a foreign arbitration award. *See* New York Convention, art. V(1)–(2). These

6

are: (1) incapacity of the parties; (2) improper notice or inability for the respondent to present a case; (3) the award does not comply with terms of the submission to arbitration or is otherwise beyond the scope of proceedings; (4) the composition of the arbitral authority was not in accordance with the parties or host country; (5) the "award has not yet become binding on the parties, or has been set aside" by another authority; (6) the subject matter of the dispute "is not capable of settlement by arbitration" under relevant law; and (7) "enforcement of the award would be contrary to public policy." *Id.*; *see also Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 19 (2d Cir. 1997); *Olin Holdings Ltd. v. State of Libya*, No. 21-CV-4150 (JGK), 2022 WL 864507, at *5–6 (S.D.N.Y. Mar. 23, 2022).

Under the New York Convention, the Court's role "in reviewing a foreign arbitral award is strictly limited" and "extremely deferential." *Yusuf Ahmed Alghanim & Sons.*, 126 F.3d at 19; *Korean Trade Ins. Corp.*, 2015 WL 1247053, at *4; *see also Karen Maritime Ltd. v. Omar Int'l., Inc.*, 322 F. Supp. 2d 224, 225 (E.D.N.Y 2004). Accordingly, when presented with a default judgment motion to confirm a foreign arbitration award, courts are tasked with providing a summary proceeding "that merely makes what is already a final arbitration award a judgment of the court . . . ." *Korean Trade Ins. Corp.*, 2015 WL 1247053, at *4 (quoting *D.H. Blair & Co.*, 462 F.3d at 110). Courts must look to see if "'a ground for the arbitrator's decision can be inferred from the facts of the case . . . .'" *Barbier v. Shearson Lehman Hutton Inc.*, 948 F.2d 117, 121 (2d Cir. 1991) (quoting *Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211, 1216 (2d Cir. 1972)). "Only 'a barely colorable justification for the outcome reached' by the arbitrators is necessary to confirm the award." *D.H. Blair & Co.*, 462 F.3d at 110 (quoting *Landy Michaels Realty Corp. v. Loc. 32B-32J, Serv. Emps. Int'l Union, AFL-CIO*, 954 F.2d 794, 797 (2d Cir. 1992)).

7

II. Analysis

    A. **Enforceability Under the New York Convention**

The Award falls under the New York Convention because: (1) China is another contracting party to the convention, (2) it was issued less than three years ago, and (3) it arose out of a commercial legal relationship between the parties. (*See* Pet., ECF No. 1, ¶¶ 5, 19, 26.) *See also* 9 U.S.C §§ 202, 207. In addition, the Award more than meets the deferential "barely colorable justification" standard because the Commission issued a seven page opinion justifying its result, even though Respondent failed to appear. (Arbitration Award, attached as Ex. B to Pet., ECF No. 1-4, at 7–13.) The Commission reviewed several pieces of evidence submitted by Petitioner including the Framework Agreement; WeChat records showing the parties' chats, which evidenced their intentions to follow the Framework Agreement and make a deal with Synear; debit notices to show that Petitioner transferred advance payments to Respondent; and copies of legal service agreements. (*Id*. at 9.) The Commission found that the Framework Agreement was a "true representation of both parties and legally effective[.]" (*Id*. at 11; *see also id.* at 13 ("This award shall be final and conclusive. This Award shall become legally effective as of the date of issuing.").)

Ultimately, the Commission ordered Respondent to pay Petitioner RMB 1,221,000 for its damages as a result of the breach of contract, plus interest, arbitration fees, and attorneys' fees. (*Id*. at 12.) Furthermore, because Respondent failed to appear before the Court in this proceeding, there are no arguments or evidence before the Court that demonstrate grounds to refuse the Award under Article V of the New York Convention. (*See* Clerk's Entry of Default, ECF No. 8.)

### B. Currency Selection & Exchange Rate for Default Judgment

The custom in U.S. courts is to convert any arbitration award issued in foreign currency to U.S. dollars. *See Yukos Capital S.A.R.L. v. Samaraneftegaz*, 592 F. App'x 8, 12 (2d. Cir. 2014) (summary order); *Shaw, Savill, Albion & Co. v. The Fredericksburg*, 189 F.2d 952, 954 (2d Cir. 1951); *Nature's Plus Nordic A/S v. Nat. Organics, Inc.*, 78 F. Supp. 3d 556, 557 (E.D.N.Y. 2015). However, when converting foreign currency awards into U.S. judgments, courts in this circuit take different approaches to determine the date on which to calculate the exchange rate. *See Rienzi & Sons, Inc. v. Puglisi*, 638 F. App'x 87, 92 (2d Cir. 2016) (summary order) ("When a court converts a foreign obligation into American currency, it must determine 'the proper date for conversion of the foreign currency into our own.'" (quoting *Shaw, Savill, Albion & Co.*, 189 F.2d at 955)).

For example, when sitting in diversity, courts generally apply New York Judiciary Law § 27(b), which uses "the rate of exchange prevailing on the date of entry of the judgment or decree," otherwise known as the "judgment-day rule." N.Y. Judiciary Law § 27(b); *see also Rienzi & Sons, Inc.*, 638 F. App'x at 92–93; *Ladas Foods S.A. v. Castella Imports, Inc.*, No. 20-CV-570 (JMA) (AYS), 2021 WL 619742, at *1 n.1 (E.D.N.Y. Jan. 5, 2021); *Wells Fargo Tr. Co., N.A. v. Synergy Grp. Corp.*, 465 F. Supp. 3d 355, 370 n.10 (S.D.N.Y. 2020), *aff'd sub nom. Wells Fargo Tr. Co., Nat'l Ass'n v. Synergy Grp. Corp.*, 848 F. App'x 467 (2d Cir. 2021). When courts find New York Judiciary Law § 27(b) to be inapplicable, they have sometimes applied the "breach-day rule," and used the exchange rate on the date of the breach giving rise to the dispute. *See, e.g., Nature's Plus Nordic A/S*, 78 F. Supp. 3d at 558. In addition, in *Yukos Capital S.A.R.L.*, the Second Circuit explained in a summary order that "under federal law, the pertinent date is determined by the law creating the relevant cause

9

of action." *Yukos Cap. S.A.R.L.*, 592 F. App'x at 12. Thus, "[i]f the cause of action arose under domestic law, the exchange rate from the date the cause of action accrued should be used." *Id.* (affirming the district court's finding that "the proper date of conversion" for a judgment enforcing a New York arbitration award was "the date that enforcement action arose, which [was] necessarily the date of the arbitration award").

Here, Petitioner argues that the "judgment-day rule" applies. (*See* Pet'r's Letter, ECF No. 13, at 2.) Petitioner contends that this rule will "produce a just result because the Respondent should not benefit from its delay in complying with the Award" and "should be the one who bears the risk of fluctuation of foreign exchange." (*Id.* at 3.) Per the parties' request, and finding no clear authority to the contrary, the Court recommends using the exchange rate on the day judgment is entered in this case. *See Albetelecom SH.A v. UNIFI Communications, Inc.*, No. 16-CV-9001 (PAE), 2021 WL 1089982 at *5 (S.D.N.Y. Mar. 22, 2021) (applying judgment-day rule in confirming a foreign arbitral award); *id.* at *5 n.3; *see also Yukos Cap. S.A.R.L.*, 592 F. App'x at 12 ("If the cause of action arose under foreign law, the exchange rate from the date of domestic judgment should be used.").

Thus, the Court respectfully recommends converting the Award, which includes fees and interest, to United States currency based on the latest exchange rate reported by the Federal Reserve at the time default judgment is entered. (*See* Arbitration Award, ECF No. 1-4, at 12.)[3]

---

[3] For example, on April 15, 2022, the principal sum listed in the Award (RMB 1,221,000.00) would have been calculated as $191,851.42, using the most recent available exchange rate listed on April 8, 2022 ($1 = 6.3643 RMB; 1,221,000.00/6.3643 = 191,851.421). *See* BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM, *Historical Rates for the Chinese Yuan Renminbi*, https://www.federalreserve.gov/releases/h10/hist/dat00_ch.htm. (last visited Apr. 15, 2022).

### C. Default Judgment Amount

As for the amount of the Award, the Commission determined that Respondent shall pay the following to Petitioner: (1) a principal amount of RMB 1,221,000 for its loss; (2) interest on the loss "calculated based on the benchmark interest rate for loan released by the People's Bank of China" from April 11, 2018, to August 19, 2019; (3) interest on the loss "calculated based on the loan prime rate released by National Interbank Funding Center" from August 20, 2019, "to the date of actual payoff;" (4) attorneys' fees in the amount of RMB 80,000; (5) notarial and certification fees in the amount of RMB 9,719.60; and (6) a portion of the arbitration fee in the amount of RMB 29,016. (Arbitration Award, ECF No. 1-4, at 12.) In total, the Commission awarded Petitioner RMB 1,339,735.60, exclusive of interest. (*Id.*)

Based on the above, Petitioner has requested that the Court enter judgment in the amount of RMB 1,534,943.39, to be calculated using the exchange rate on the date of judgment. (*See* Proposed Order Granting Mot. for Default J. ("Proposed Order"), ECF No. 13-1, at 1.) Petitioner reached this total by adding: (1) the principal amount of RMB 1,221,000, awarded by the Commission for its loss; (2) RMB 78,654.14 in interest on the loss calculated from April 11, 2018, to August 19, 2019 (495 days);[4] (3) RMB 116,553.65 in interest on the loss calculated from August 20, 2019, to January 28, 2022 (892 days);[5] (4) RMB 80,000 in attorneys' fees as awarded by the

---

[4] Petitioner represents that the benchmark loan rate for the period from April 11, 2018, to August 19, 2019, as stipulated by the People's Bank of China, was 4.75%. (*See* Pet., ECF No. 1, ¶ 21; *see also* Proposed Order, ECF No. 13-1, at 2; Arbitration Award, ECF No. 1-4, at 12.) Accordingly, Petitioner appears to have reached this figure by calculating 1,221,000 x 0.0475/365 x 495 = 78,654.14.

[5] As noted above, the Commission awarded Petitioner interest on the 1,221,000 loss "for the period from August 20, 2019 to the date of actual payoff," to "be calculated based on the loan prime rate released by National Interbank Funding Center." (Arbitration Award, ECF No. 1-4, at 12.) Petitioner's interest calculations track the publicly available

11

Commission;[6] (5) RMB 9,719.60 in notarial and certification fees as awarded by the Commission; and (6) RMB 29,016 in arbitration fees as awarded by the Commission. (*See id.* at 2–3.) In addition, Petitioner seeks post-judgment interest "at the legal rate until the judgment is satisfied." (*Id.* at 1.)

As an initial matter, the Court recommends granting Petitioner's request for the principal total of RMB 1,339,735.60, exclusive of interest, which is comprised of 1,221,000 for the sum of its loss, RMB 80,000 in attorneys' fees, RMB 9,719.60 notarial and certification fees, and RMB 29,016 in arbitration fees. (Arbitration Award, ECF No. 1-4, at 12.) The Court finds that the Commission "provided more than a colorable justification for awarding the[se] amounts." *Bailey Shipping, Ltd. v. Am. Bureau of Shipping*, 431 F. Supp. 3d 359, 365 (S.D.N.Y. 2019) (quotation marks omitted).

On the question of prejudgment interest, granting or denying Petitioner's request is within the discretion of the District Court. *See Commercial Union Assur. Co.*

---

historical data for the loan prime rates released by the National Interbank Funding Center. (*See* Proposed Order, ECF No. 13-1, at 2.) *See also LPR Chart*, NAT'L INTERBANK FUNDING CTR., https://www.chinamoney.com.cn/english/bmklpr/ (last visited Apr. 15, 2022). However, Petitioner calculates this prejudgment interest amount for the period from August 20, 2019, until January 28, 2022 — as opposed to until "the date of actual payoff." (*See* Proposed Order, ECF No. 13-1, at 3; Arbitration Award, ECF No. 1-4, at 12.) The Court could construe Petitioner's inclusion of this end date as forgoing additional prejudgment interest beyond January 28, 2022. *Cf. Phoenix Bulk Carriers (BVI) Ltd. v. Triorient LLC*, No. 20-CV-936 (JGK), 2020 WL 4288031, at *4 (S.D.N.Y. July 26, 2020). However, to effectuate the Commission's Award, the Court recommends including additional prejudgment or "prepayment" interest from January 28, 2022, to the date judgment is entered at the rates listed in the National Interbank Funding Center chart. For instance, between January 28, 2022, and April 15, 2022 (77 days), Petitioner would be entitled to an additional RMB 9,530.49, based on the current 3.70% loan prime rate (1,221,000 x 0.0370/365 x 77 = 9,530.49041).

[6] The Court notes that although Petitioner "requests reasonable attorneys' fees and costs in collecting the Arbitration Award as permitted by applicable law," Petitioner has not provided authority for an award of attorneys' fees in relation to the instant proceedings. (*See* Pet., ECF No. 1, Prayer for Relief; Proposed Order, ECF No. 13-1.)

12

*v. Milken*, 17 F.3d 608, 613 (2d. Cir. 1994) ("The decision whether to award prejudgment interest and its amount are matters confided to the district court's broad discretion . . . ."). However, "in the Second Circuit, there is 'a presumption in favor of prejudgment interest.'" *Seed Holdings, Inc. v. Jiffy Int'l AS*, 5 F. Supp. 3d 565, 591 (S.D.N.Y. 2014) (quoting *Waterside Ocean Navigation Co. v. Int'l Navigation Ltd.*, 737 F.2d 150, 154 (2d Cir. 1984)); *see also Finkel v. Pomalee Elec. Co.*, No. 16-CV-4200 (DRH) (AKT), 2018 WL 1320689, at *12 (E.D.N.Y. Feb. 22, 2018) (collecting cases), *report and recommendation adopted*, No. 16-CV-4200 (DRH) (AKT), 2018 WL 1318997 (E.D.N.Y. Mar. 14, 2018). Having reviewed Petitioner's calculations of prejudgment interest, the Court recommends awarding the requested RMB 195,207.79[7] for the period from April 11, 2018, through January 28, 2022, in an exercise of discretion, as well as an additional amount of prejudgment interest from January 28, 2022, through the date of judgment, in accordance with the Award issued by the Commission. (*See* Arbitration Award, ECF No. 1-4, at 12.) *See also Bailey Shipping, Ltd.*, 431 F. Supp. 3d at 365.

Accordingly, the Court respectfully recommends entering judgment in the amount of RMB 1,534,943.39 plus additional prejudgment interest as discussed above, to be converted into U.S. currency at the exchange rate reported by the Federal Reserve at the time judgment is entered. In addition, the Court respectfully recommends that post-judgment interest be awarded pursuant to 28 U.S.C. § 1961(a). *See, e.g., New York City & Vicinity Dist. Council of Carpenters v. LILCO Constr. Corp.*, No. 18-CV-2695 (RRM) (CLP), 2020 WL 8084267, at *6 (E.D.N.Y. July

---

[7] This total is comprised of RMB 78,654.14 in interest on Petitioner's principal loss calculated from April 11, 2018, to August 19, 2019 (495 days), as well as RMB 116,553.65 in interest on the loss calculated from August 20, 2019, to January 28, 2022 (892 days). *See supra* notes 4 and 5.

13

21, 2020), *report and recommendation adopted*, No. 18-CV-2695 (RRM) (CLP), 2021 WL 103264 (E.D.N.Y. Jan. 11, 2021).

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends that Petitioner's motion be granted and that judgment be entered in Petitioner's favor in the amount of RMB 1,534,943.53 — plus prejudgment interest using the relevant National Interbank Funding Center loan prime rate on the principal amount of RMB 1,221,000, calculated from January 28, 2022, through the date judgment is entered — all to be converted to U.S. currency on the date judgment is entered. Finally, the Court recommends awarding Petitioner post-judgment interest at the statutory rate governed by 28 U.S.C § 1961.

\* \* \* \* \*

This Report and Recommendation will be filed electronically and a copy sent by mail to Respondent JZ Swimming Pigs Inc. Objections to this Report and Recommendation must be filed, with a courtesy copy sent to the Honorable Rachel P. Kovner, at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a), (e) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g.*, *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

    **SO ORDERED.**

Dated:  Brooklyn, New York
       April 15, 2022

                              *Taryn A. Merkl*
                              TARYN A. MERKL
                              UNITED STATES MAGISTRATE JUDGE